UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #:_____                    │
│ DATE FILED:_10/01/2020__                  │
└─────────────────────────────────────────┘
```

-------------------------------------------------------------------X
                                             :

ANTONY VARBERO,                    :
                                           :
               Plaintiff,        :
                                           :                20-cv-2538 (LJL)
        -v-                       :
                                           :           OPINION AND ORDER
ANASTASIOS P. BELESIS, et al.,      :
                                           :
              Defendants.      :
                                           :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Defendants Anastasios Belesis ("A. Belesis"), Tabitha Belesis ("T. Belesis") (together, "Individual Defendants"), 2008 Anastasios Belesis Irrevocable Trust US Dated Sept. 2008 (the "Trust"), Tomtab LLC ("Tomtab"), Crown Enterprises, LLC ("Crown Enterprises"), and Lugano Ventures, LLC ("Lugano Ventures") (together, "Corporate Defendants") move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint, Dkt. No. 1 ("Compl.") against them for failure to state a claim upon which relief can be granted.

## BACKGROUND

       Plaintiff, Anthony C. Varbero ("Plaintiff" or "Varbero") is an attorney and a Florida resident. Compl. ¶ 9. A. Belesis is a New York resident and was at all relevant times the President and Chief Executive Officer of a now-defunct broker-dealer, John Thomas Financial ("JTF"). During 2012 and 2013, A. Belesis and JTF faced regulatory investigations that ultimately in 2015 resulted in A. Belesis's lifetime ban from the securities industry, JTF's expulsion as a broker-dealer, and heavy fines. *Id.* ¶¶ 1, 10. A. Belesis retained Plaintiff in 2015

to defend him against lawsuits seeking millions in damages commenced by former JTF clients. *Id.* ¶ 2.

The remaining defendants are all alleged to be affiliated with A. Belesis.  T. Belesis is Belesis's now apparently estranged wife who resides at 60 Beach Street in Manhattan ("Beach Street Residence").  *Id*. ¶ 15.  Tomtab, Crown Enterprises, and Lugano Ventures are alleged to be limited liability companies solely owned and controlled by T. Belesis, maintaining a principal place of business at 60 Beach Street, the address where the Belesis family resides.  *Id*. ¶ 11, 13, 14, 24.  The Trust is a trust created under the laws of the State of New York.  A. Belesis's brother, George Belesis, is the Trustee of the Trust.  *Id*. ¶ 12.

Plaintiff sues over two promissory notes executed by A. Belesis in connection with Plaintiff's legal representation of A. Belesis from January 2015 onwards.  Dkt. Nos. 4-1, 4-2.  On April 17, 2019, Belesis executed a promissory note ("Note"), secured by a Confession of Judgment, unconditionally promising to pay Plaintiff the sum of $550,000.  Dkt. No. 4 ¶ 16; Dkt. No. 4-1.  The note reflects that the sum is due immediately (but that interest does not accrue until September 1, 2019) and that the amount of the principal of the loan remaining unpaid shall be due and payable immediately upon five days written notice of one of a series of events of default, including the sale by A. Belesis of any or all real estate owned by him.  Dkt. No. 4-1.  The Note recites that Belesis "retained [Plaintiff] for over 15 FINRA Arbitrations, US Securities Exchange and Commission settlements, State and Federal Cases, including the pending matters FINRA Case No: 17-00820 and No: 18-00525" and that "the Judgment Amount has been calculated based upon the non-payment of legal fees justly due from January 1, 2015, between [Belesis] and [Plaintiff]."  *Id*.  The Confession of Judgment securing the Note confesses judgment in the

principal sum of $550,000 plus interest at rate of 9% after September 1, 2019, plus statutory

costs and disbursements, and attorneys' fees." *Id.*

On May 3, 2019, A. Belesis executed a second promissory note ("Second Promissory

Note") and Confession of Judgment unconditionally promising to pay Plaintiff the sum of

$325,000 payable on or before September 1, 2019.  Dkt. No. 4-2.  The Second Promissory Note

contains the same provisions regarding default and acceleration as the Note.  It too is secured by

a Confession of Judgment for "the principal sum of $325,000.00, plus interest at the rate of 9%

after September 1, 2019, plus statutory costs and disbursements, and attorneys' fees." *Id.*  The

confession of judgment also acknowledges that it "arises in connection with [Plaintiff's] prior

representation, outstanding balance, settlement of claims alleging violations of the federal

securities laws, and defense of claims alleging violation of federal securities laws," and that "the

Judgment Amount has been calculated based on the non-payment of legal fees justly due

pursuant to representations from January 1, 2015 . . . ." *Id.*

The complaint alleges that Plaintiff provided written notice to A. Belesis of his default of

both notes and that no payments have been made under the Notes.  Compl. ¶ 20-21.

The complaint also alleges what it claims are a series of fraudulent transfers engaged in

by A. Belesis and the other Defendants from 2012 to approximately 2016 to shield A. Belesis's

assets from known or potential creditors.  Between 2012 and 2013, A. Belesis allegedly

transferred all of his assets to T. Belesis, a transaction that rendered him "penniless."  Compl. ¶

25.  In March 2012, on or about the time the regulatory investigations began against A. Belesis

and JTF, A. and T. Belesis transferred their interest in the 60 Beach Street Residence to Tomtab

for no consideration.  *Id.* ¶ 26; Dkt. No. 19-8.  In April 2013, approximately two months prior to

JTF closing its doors, A. Belesis transferred his ownership interest in two New York

condominiums to the Trust for Belesis's son for no consideration.  Compl. ¶ 27.  In October

2014, A. Belesis transferred his interest in Lugano Ventures to T. Belesis for no consideration.

*Id*. ¶ 29.  In 2016, the assets and funds belonging to the other Defendants in this case were

transferred, through Tomtab and in connection with the refinancing of the 60 Beach Street

Residence, to Lugano Ventures and then back to A. and T. Belesis.  *Id*. ¶¶ 30-36.

Plaintiff brings a claim for breach of contract against A. Belesis; claims for aiding and

abetting the same against Defendants other than A. Belesis (which are brought against the

Corporate Defendants on a theory that the corporate veil should be pierced); and claims for

fraudulent conveyance under N.Y. Debt. & Cred. Law, §§ 273, 275, and 276 ("DCL"), and for

attorney's fees against all defendants.

DISCUSSION

A. The Relevant Standards

To evaluate a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

allegations in the complaint are accepted as true, and all reasonable inference are drawn in favor

of the plaintiff.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The

Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009).  Put another way, the plausibility requirement "calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the

claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx v. Siracusano*, 563 U.S. 27, 46 (2011).

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider

documents that are referenced in the complaint, documents that the plaintiff relied on in bringing

suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing

suit, or matters of which judicial notice may be taken." *Commerzbank AG v. Deutsche Bank

Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 465 (S.D.N.Y. 2017) (citing *Chambers v. Time Warner, Inc.*,

282 F.3d 147, 153 (2d Cir. 2002)).

"Although the statute of limitations is ordinarily an affirmative defense that must be

raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if

the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774

F.3d 791, 798 n.12 (2d Cir. 2014) (citation omitted).  If it appears from a complaint that the

claims are prima facie time-barred, the burden is on the plaintiff to "plausibly alleg[e] that they

fall within an exception to the applicable statute of limitations." *Twersky v. Yeshiva Univ.*, 993

F. Supp. 2d 429, 436 (S.D.N.Y. 2014) (citing cases).

B. <u>Defendants' Motion To Dismiss the Second Cause of Action for Piercing the Corporate Veil/Alter Ego</u>

Defendants move to dismiss Count Two of the Complaint, which alleges breach of

contract against the Corporate Defendants on a theory that the corporate veil may be pierced, for

failure to state a claim upon which relief can be granted.  The only Corporate Defendant as to

which the motion makes any argument that the veil should not be pierced is Tomtab, *see* Dkt.

No. 18 at 6, so the Court construes the motion as seeking only to dismiss Count Two against

Tomtab.

Count Two alleges, in pertinent part, that the Defendants other than Belesis "aid[ed] and

abet[ed] Belesis [to] defraud and avoid paying creditors" and that "Defendants use[d] a series of

sham corporations to transfer assets and property without consideration, as well as shuttle money

in and out of their bank accounts to pay for the individual defendants [sic] extravagant lifestyle . . ."  Compl. ¶ 4.  In particular, Plaintiff alleges that "[f]or the better part of the last decade, [A.] Belesis has used various corporate entitles [*sic*] and the Trust to shield his assets from known creditors or protentional [sic] creditors."  *Id*. ¶ 23.  He points out that "Tomtab, Crown Enterprises, and Lugano Ventures are commonly owned by [T. Belesis] and maintain a principle [*sic*] place of business located at 60 Beach Street, the address where the Belesis family resides." *Id*. ¶ 24.

New York choice-of-law principles require that the law of the state of incorporation should be applied to a claim of alter ego and piercing the corporate veil.  *See Fletcher v. Atex Inc*. 68 F.3d 1451, 1456 (2d. Cir. 1995).  Tomtab was incorporated in Delaware.  Compl. ¶ 11.  Under the law of Delaware, a court may pierce the corporate veil "where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner."  *Geyer v. Ingersoll Publ'ns. Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *see Fletcher*, 68 F.3d at 1457.

The Second Circuit has explained that under Delaware law, two elements must be established to pierce the corporate veil on an alter-ego theory: (1) the entities must "operate[] as a single economic entity," and (2) there must be an "overall element of injustice or unfairness." *NetJets Aviation, Inc. v. LHC Commc'ns., LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (citing *Fletcher,* 68 F.3d at 1457); *see Harper v. Delaware Valley Broad., Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir.1991); *see also Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990); *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *5, (Del. Ch. Sept. 19, 1989).  If the relevant standards are met, the corporate veil may be pierced to attach liability for a contract breach to a non-signatory. *See, e.g.*, *NetJets Aviation, Inc.*, 537 F.3d at 177 (2d Cir. 2008) (vacating dismissal of claims

including breach of contract claims brought under an alter ego theory); *see also Pauley*

*Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. Ch. 1968) ("[U]pon a proper showing

corporate entities as between parent and subsidiary may be disregarded . . . only in the interest of

justice, when such matters as fraud, contravention of law or contract, public wrong, or where

equitable consideration among members of the corporation require it, are involved.").

      The Court must consider various factors to determine whether the entities operated as a

single economic entity, including:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether
> the corporation was solvent; whether dividends were paid, corporate records kept, officers
> and directors functioned properly, and other corporate formalities were observed; whether the
> dominant shareholder siphoned corporate funds; and whether, in general, the corporation
> simply functioned as a facade for the dominant shareholder.

*Fletcher*, 68 F.3d at 1458 (quoting *Harco*, 1989 WL 110537, at *4.)

      "While 'no single factor c[an] justify a decision to disregard the corporate entity, . . .

some combination of them [i]s required.'" *Harper*, 743 F. Supp. at 1085.  Ultimately, "[t]he legal

test for determining when a corporate form should be ignored in equity cannot be reduced to a

single formula that is neither over-nor under-inclusive."  *Irwin & Leighton, Inc. v. W.M.*

*Anderson Co.*, 532 A.2d 983, 989 (Del. Ch. 1987).  As the Second Circuit has summarized:

> Stated generally, the inquiry initially focuses on whether 'those in control of a corporation'
> did not 'treat[ ] the corporation as a distinct entity'; and, if they did not, the court then seeks
> 'to evaluate the specific facts with a standard of 'fraud' or 'misuse' or some other general
> term of reproach in mind,' such as whether the corporation was used to engage in conduct
> that was 'inequitable,' or 'prohibited,' or an 'unfair trade practice,' or 'illegal.'

*NetJets Aviation, Inc.*, 537 F.3d at 177 (2d Cir. 2008) (citations omitted).

      The complaint adequately alleges that the Individual Defendants did not treat Tomtab as

a distinct economic entity, and that they in fact used Tomtab to perpetrate fraud.  From what

appears in the Complaint, Tomtab did not enjoy a distinct existence as an independent legal

entity but rather served as a vehicle through which assets could be transferred and fraud could be perpetrated.  The corporation is "solely owned and controlled by Tabitha Belesis," Compl. ¶ 11, who is the wife of A. Belesis and also the controller of Crown Enterprises and Lugano Ventures, which were also alleged vehicles for fraudulent transfers.  *Id*. ¶¶ 27-28, 34-35.  There is no other person who has an ownership interest or control of Tomtab.  It also plausibly appears that the entities were not operated independently from A. or T. Belesis.  A. and T. Belesis transferred their interest in their condominium located at the 60 Beach Street Residence to Tomtab for no consideration.  *Id*. ¶ 26; Dkt. No. 19-7 at 1-2.  This transfer was made as part of an alleged "concentrated effort to hinder and delay payment to creditors."  *Id*. ¶ 45.  The 60 Beach Street Residence serves as both the principal place of business of Tomtab, *Id*. ¶ 11, and the residence of T. Belesis and the "Belesis Family," *Id*. ¶¶ 15, 24.

These allegations are adequate to state a claim for relief on a theory that the corporate veil should be pierced.  The Complaint alleges that funds flowed among the Individual and Corporate Defendants in a series of transfers made without consideration, in order to shield such funds from recovery by creditors. These allegations amount to precisely the sort of "elaborate shell game" that preclude dismissal of claims that would pierce the corporate veil.  *In re Ticketplanet.com*, 313 B.R. 46, 70 (Bankr. S.D.N.Y. 2004) (quotation omitted).

"Ordinarily the determination of the nature and extent of domination is a question of fact."  *In re Sunbeam Corp.*, 284 B.R. 355, 365 (Bankr. S.D.N.Y. 2002) (citation omitted).  Such is the case here, where Plaintiff has plausibly alleged that A. and T. Belesis utilized the Corporate Defendants, over which they have sole control, in a series of fraudulent conveyances to shield funds from creditors.  Although the complaint does not contain specific details about the corporate formalities observed by Tomtab, the allegations that it is "solely owned and

8

controlled" by T. Belesis, that its principal place of business is at the residence of the Belesis family, and that it was used in a fraudulent scheme to shield funds from creditor recovery are sufficient at the pleading stage.

C.  <u>Defendants' Motion to Dismiss Count Three to Set Aside Fraudulent Conveyances</u>
     Defendants also move to dismiss the third cause of action for fraudulent conveyance on the grounds that it is barred by the statute of limitations.  That cause of action alleges a series of fraudulent conveyances from 2012 to 2016 in violation of the DCL §§ 273, 275 and 276.

New York law defines two different types of conveyances that can be set aside by creditors based on their fraudulent nature: constructive fraudulent conveyances and intentional fraudulent conveyances.  *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 611 (S.D.N.Y. 2018), *aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16 (2d Cir. 2019).  DCL §§ 273 and 275 address constructive fraudulent conveyances.[1]  DCL § 273 provides that "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."  A conveyance is deemed constructively fraudulent under DCL § 273 only if "two separate elements are satisfied: first, it is made without fair consideration, and second, the transferor is insolvent or will be rendered insolvent by the

---

[1] The Court notes that on December 6, 2019, New York State enacted the "Uniform Voidable Transactions Act," which repealed and replaced certain provisions related to fraudulent conveyances (including NYDCL §§ 273, 275, and 276).  *See Great Atlantic & Pacific Tea Co., Inc. v. 380 Yorktown Food Corp.*, 2020 WL 2139699 at *17 n.19 (S.D.N.Y. May 4, 2020) (citing 2019 N.Y. Laws, ch. 580 (A5622)).  The amendment became effective on April 4, 2020, but states that it "shall not apply to a transfer made or obligation incurred before such effective date, nor shall it apply to a right of action that has accrued before such effective date." 2019 N.Y. Laws, ch. 580 § 7; see *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) ("We briefly note that all sections of the NYDCL relevant to this appeal have been repealed and replaced—effective April 4, 2020—by an act of the New York legislature approved on December 6, 2019. The new provisions, however, will 'not apply to a transfer made or obligation incurred before' the act's effective date, 'nor shall [they] apply to a right of action that has accrued before [that] effective date.'" (citations omitted)).  Accordingly, all references to and analysis of these provisions refers to the operative law at the time of the underlying actions—prior to the amendments effected by 2019 legislation.

transfer in question." *United States v. Watts*, 786 F.3d 152, 164 (2d Cir. 2015). "[T]he element of insolvency is presumed when a conveyance is made without fair consideration, and the burden of overcoming such presumption is on the transferee." *Id.* at 165 (citations omitted); *see also Kim*, 311 F. Supp. 3d at 611.

NYDCL § 275 provides: "Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature is fraudulent as to both present and future creditors." Under Section 275, a "plaintiff must allege both a lack of fair consideration and that the defendant intended or believed that it would incur debts beyond its ability to pay when the debts matured." *Kim*, 311 F. Supp. 3d at 611 (quoting *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 798 (S.D.N.Y. 2017) (internal citations and quotations omitted)).

DCL § 276 addresses conveyances made with actual intent to defraud. It provides: "A conveyance may be avoided on the basis of actual fraud if the . . . actual intent to hinder, delay, or defraud present and future creditors is established." As the case law has developed, a creditor can prove the relevant intent from the facts and circumstances surrounding the transfer. *See Kim*, 311 F. Supp. 3d at 612; *S.E.C. v. Smith*, 646 Fed. App'x 42, 45 (2d. Cir. 2016). Courts refer to the badges of fraud commonly associated with fraudulent transfers that give rise to the inference of intent. They include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship, or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Kim*, 311 F. Supp. 3d at 612 (citations omitted); *see also In re Kaiser*, 722 F.2d 1574, 1582–83 (2d Cir. 1983).

Importantly, both Section 276 and Section 275 reach schemes to defraud "future creditors." *J&J Holding Co. v. Rabinowitz*, 607 N.Y.S.2d 724, 725 (2d Dept. 1994) ("the plain language of the statute reaches conveyances intended to defraud future creditors, including conveyances which occurred prior to the time the obligation to the plaintiff arose"); *United States v. Nassar*, 2014 WL 58226677, at * 9 (S.D.N.Y. Nov. 10, 2014) (same); *Kashan v. Kosoff*, 491 N.Y.S.2d 801, 802 (2d Dep't 1985) ("If plaintiff can establish that the joint property was purchased in contemplation of protection against future creditors whom decedent intended to defraud . . . he may recover under Debtor and Creditor Law 276"); *In re Rosenfield's Will*, 213 N.Y.S.2d 1009, 1015 (Sur. Ct. 1961), *aff'd sub nom. Matter of Rosenfield's Estate*, 236 N.Y.S.2d 941 (1962) ("A transfer made with actual intent to defraud is fraudulent as to both present and future creditors.").

Two separate statutes of limitations correspond to the two different forms of fraudulent transfers.  Pursuant to N.Y. C.P.L.R. 213(8), the statute of limitations for actual fraud is 'the greater of six years from the date the cause of action accrued or two years from the time plaintiff or the persons under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." *Gutkin v. Siegal*, 926 N.Y.S.2d 485, 486 (1st Dep't 2011); *see Wall St. Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 248 (1st Dep 1999) ("In cases of actual fraud . . . the claim is timely if brought either within six years of the date that the fraud or conveyance occurs or within two years of the date that the fraud or conveyance is discovered or should have been discovered, whichever is longer.") (citations omitted).  Accordingly, the limitations period

for a claim brought under Section 276 depends upon the date the fraud was discovered or should have been discovered.

With respect to claims of constructive fraud, however, the limitations period expires six years from the date of the alleged fraud, irrespective of when the fraud was or should have been discovered by the plaintiff.  N.Y. C.P.L.R. 213; *Dowlings, Inc. v. Homestead Dairies, Inc.*, 932 N.Y.S.2d 192, 197 (3d Dep't 2011) ("The constructive fraud claims, asserted pursuant to Debtor and Creditor Law §§ 273, 274 and 275, are governed by a six-year limitations period, commencing on the date of the allegedly fraudulent transfer, without regard to the date of plaintiff's discovery of the transfer."); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 157 (1st Dep't 2003) ("the discovery accrual rule does not apply in cases alleging constructive fraud"); *Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 744 n.73 (S.D.N.Y. 1997) ("The Legislature enacted Section 213(8) primarily in order to make clear that the discovery accrual provision adheres only to actual fraud claims.") (citations omitted).

Plaintiff's allegations of constructive fraud with respect to certain conveyances are time-barred.  In particular, to the extent that Plaintiff alleges that the 2012 and 2013 transfers of property from A. Belesis to T. Belesis, and the 2013 transfer of the New York condominiums to the Trust violate DCL §§ 273 and 275, those claims are time-barred.

On the other hand, Plaintiff may pursue claims under NYDCL §§ 273 and 275 with respect to the transactions after March 2014, and in particular the claims with respect to transactions in 2016.

In addition, the motion to dismiss the DCL § 276 claims is denied in its entirety.  On its face, the complaint does not allege facts from which the Court can infer that Plaintiff knew or

should have known of his cause of action earlier than two years before the filing of this action. "When . . . it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of facts." *Gorelick v. Vorhand*, 920 N.Y.S.2d 703 (2d Dep't 2011).

Although the Complaint states that other parties have brought similar claims—and obtained judgments—against Belesis in other cases brought "since 2014," Compl. ¶ 5, "[t]he failure to ascertain that an allegedly fraudulent conveyance has occurred through the inspection of public records is not a basis for imputing knowledge of the fraud in the absence of circumstances that would require the plaintiff to investigate." *Citicorp Tr. Bank, FSB v. Makkas*, 889 N.Y.S.2d 656, 659 (2d Dep't 2009), *abrogated on other grounds by Coyle v. Lefkowitz*, 934 N.Y.S.2d 216 (2d Dep't 2011). The question of whether Plaintiff knew or should have known of the alleged fraud is a question of fact and cannot be decided at this stage.

D. Defendants' Motion to Dismiss Count Four for Attorney's fees

Defendants move to dismiss the fourth cause of action for attorney's fees. Defendants argue that there is no clear language requiring them to pay attorney's fees in connection with a dispute with Plaintiff and that the agreement to pay attorney's fees contained in the Promissory Notes and Confessions of Judgment were given without consideration. Defendants other than A. Belesis argue that fees cannot be recovered against them because there is no privity of contract between them and Plaintiff. The motion is denied.

Under New York law, a prevailing party may recover attorney's fees from the losing party where authorized by statute, agreement, or court rule. *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597 (2004); *Gotham Partners L.P. v. High River Ltd., P'ship*,

906 N.Y.S.2d 205 (1st Dep't 2010); *NetJets Aviation, Inc.*, 537 F.3d at 175; *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d at 177-79.

The contract between Plaintiff and A. Belesis provides for an award of attorney's fees. Both the First and Second Promissory Notes and the corresponding Confessions of Judgment permit an award of attorney's fees against A. Belesis in language that is clear and unambiguous. The Note and Second Promissory note both contain a section titled "Costs of Collection," providing that A. Belesis "promises to pay reasonable attorney's fees, legal disbursements and any other costs expended in collection of any balance due under this Note or any portion of the indebtedness evidenced hereby whether suit is brought or not, an amount equal to the actual attorney's fees, legal disbursements and costs expended."  Dkt. Nos. 4-1, 4-2.  Each Note goes on to say that Plaintiff "is empowered to add the amount of attorney's fees, legal disbursements and any other costs expended in collection of any balance due, to the amount of any balance outstanding hereunder, and charge interest thereon at the rates specified herein with respect to the principal of this Note."  *Id*.  The Confession of Judgment attached to each note, signed by A. Belesis, agrees to entry of judgment in the principal amount of the loan, plus interest, "plus statutory costs and disbursements and attorney's fees."  *Id*.

In addition, although fees and costs are not recoverable by statute for claims brought under constructive fraud statutes, *see Kim*, 311 F. Supp. 3d at 622 (citing *In re Stephen Douglas, Ltd.*, 174 F.R. 16, 22 (Bankr. E.D.N.Y. 1994)), they are recoverable under DCL § 276-a when there has been a finding by clear and convincing evidence of actual intent to commit fraud.  *Id*. Section 276-a provides in relevant part:

> In an action . . . brought by a creditor . . . to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or

14

defraud either present or future creditors, in which action … the creditor shall recover judgment, the justice … presiding at the trial shall fix the reasonable attorney's fees of the creditor … in such action . . . , and the creditor … shall have judgment therefor against the debtor and the transferee who are defendants, in addition to the other relief granted by the judgment.

Section 276-a thus "establishes a creditor's right to bring an action for two specified forms of relief—to set aside a conveyance and to recover the legal costs of prosecuting the action to judgment." *In re Kovler*, 253 B.R. 592, 598 (Bankr. S.D.N.Y. 2000). The provision is binding in federal court. *Id.* "The legislative objective in enacting Section 276-a was to make whole the creditor who is coerced to expend resources to bring a lawsuit by shifting the legal costs of the action to the debtor whose fraud has necessitated the litigation." *Id.* Moreover, "where the intent to defraud was actual and affirmative, 'the exact status of the plaintiff, at the time of the actions complained of or of any of them, is immaterial.'" *Id.* at 596 (quoting *Lazar v. Towne House Rest. Corp.*, 142 N.Y.S.2d 315, 321 (Sup. Ct. 1955), *aff'd*, 171 N.Y.S.2d 334 (2d Dept. 1958), *aff'd* 6 N.Y.2d 923 (1959)). Attorney's fees can be recovered against a grantee of a fraudulent conveyance upon a specific finding that he was aware of and participated in the actual fraud. *Kim*, 311 F. Supp. 3d at 622; *Cadle Co. v. Newhouse*, 20 Fed. Appx. at 74; *Carey v. Crezcenzi*, 923 F.2d 18, 20 (2d Cir. 1991).

Thus, A. Belesis' motion clearly lacks merit. The Promissory Notes entitle Plaintiff to collect against Belesis its "reasonable attorney's fee" and legal disbursements incurred in the course of attempting to collect on the Notes, regardless of the cause of action. There is no other party to whom the clause could logically or reasonably apply other than the maker of the note— Plaintiff. Indeed, the Notes go on to permit Plaintiff to add the amount of attorney's fees and

legal disbursements to the collection of any balance outstanding.  The same is true with respect to the Confession of Judgment.

The motion of the other defendants is only slightly more successful.  Although Plaintiff will not be able to recover against them if all Plaintiff proves is constructive fraud, the complaint is not so limited.  It also alleges that each of the other defendants received a fraudulent transfer with actual intent.  *See* Compl. ¶ 45.  If Plaintiff is able to make that case, then they too may be liable for attorney's fees.

Defendants' reliance on *Hooper Assoc. v. AGS Computs.*, 548 N.E.2d 903 (N.Y. 1989) is entirely unavailing.  In that case, the New York Court of Appeals construed a clause in a contract requiring the defendant to "'indemnify and hold harmless [plaintiff] from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees' arising out of" five distinct causes of action including breach of warranty claims.  *Id*. at 904 n. 1.  The clause clearly applied to third party claims against the plaintiff and did not refer to claims between the contractual counterparties themselves.  In addition, another provision of the same contract required the plaintiff to "promptly notify" the defendant of a claim for indemnification and gave the defendant the right to assume the defense of such an indemnification claim, a provision that would be meaningless applied to a suit between the parties.  *Id*. at 492.  Applying the principle that an obligation to indemnify should not be implied and that the "court should not infer a party's intention to waive the benefit of the [American] rule unless the intention to do so is unmistakably clear from the language of the promise," the court held that the clause did not extend to a claim for fees arising from a litigation between the parties.  *Id*.

16

Here, by contrast the language is clear, complete, and unambiguous.  *See, e.g. Crossroads ABL, LLC v. Canaras Cap. Mgmt., LLC*, 963 N.Y.S.2d 645, 646 (1st Dep't 2013) (distinguishing *Hooper Associates* and granting summary judgment on a claim for attorney's fees).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART.  The Complaint is dismissed to the extent that it pleads 1) constructive fraud, pursuant to NYDCL §§ 273 and 275, as to conveyances in 2013 and 2014; and 2) that Plaintiff is entitled to recover attorney's fees from the Defendants other than A. Belesis upon prevailing on claims of constructive fraud alone.  As to the remaining claims, Defendants' motion is DENIED.


SO ORDERED.

Dated: October 1, 2020
       New York, New York                    _____
                                                      LEWIS J. LIMAN
                                                 United States District Judge